IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


SANTIAGO MELITON OLIVARES,        §
TDCJ #1607304,                    §
                                  §
              Petitioner,         §
                                  §
v.                                §
                                  §        CIVIL ACTION NO. H-15-1816
WILLIAM STEPHENS, Director,       §
Texas Department of Criminal      §
Justice - Correctional            §
Institutions Division,            §
                                  §
              Respondent.         §


## MEMORANDUM OPINION AND ORDER


State inmate Santiago Meliton Olivares ("Olivares") (TDCJ #1607304) has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") under 28 U.S.C. § 2254 to challenge a 2009 state court conviction (Docket Entry No. 1). The respondent, William Stephens, has filed a Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 11). Olivares has filed Petitioner's Response to Respondent's Motion for Summary Judgment With Brief in Support ("Petitioner's Response to MSJ") (Docket Entry No. 15) and Motion for Evidentiary Hearing (Docket Entry No. 16). After considering the pleadings and the applicable law, the court will grant Respondent's MSJ and dismiss the Petition for the reasons explained below.

## I.   Procedural History

A grand jury in Harris County, Texas, returned an indictment against Olivares, charging him with aggravated robbery with a deadly weapon in cause number 1170743.[1]   The indictment was enhanced for purposes of punishment with allegations that Olivares had at least two prior felony convictions.[2]   Following a joint trial with his brother Oscar Olivares ("Oscar"), who was charged as a co-defendant, a jury in the 337th District Court for Harris County, Texas, found Olivares and his brother guilty of the lesser included offense of aggravated assault with a deadly weapon.[3] After Olivares conceded that the enhancement allegations were true, the trial court sentenced him to serve fifty years in prison.[4] (Oscar Olivares received a forty-year sentence.[5])

On direct appeal Olivares argued that the trial court erred by including the lesser-included offense of aggravated assault in the jury charge because there was no evidence that he was guilty only of the lesser offense.[6]   The State, in its appellate brief, provided the following summary of the evidence presented at trial:

---

[1]Indictment, Docket Entry No. 12-5, p. 13.

[2]Id.

[3]Judgment of Conviction by Jury, Docket Entry No. 12-6, p. 43; Reporter's Record, vol. 6, Docket Entry No. 12-15, p. 6.

[4]Judgment of Conviction by Jury, Docket Entry No. 12-6, p. 43; Reporter's Record, vol. 7, Docket Entry No. 12-16, p. 8.

[5]Reporter's Record, vol. 7, Docket Entry No. 12-16, p. 8.

[6]Brief for Appellant, Docket Entry No. 12-3, p. 15.

Chante Jones and Erika Rodriguez lived together in a house in the Fifth Ward. (RR III 25; RR IV 66-67, 149). Erika's boyfriend stored some stolen property in her home that Oscar Olivares intended to buy. (RR IV 97-98).

Oscar, whom Erika had known for several months, visited her home on the afternoon of May 22, 2008, and stayed until nighttime. (RR IV 66-73, 206). When Erika suggested that Oscar should leave, he stepped outside and made a phone call. (RR IV 73, 153). A minute later, Oscar's brother, appellant, "busted the door" and pointed a gun at Erika and Chante. (RR IV 74, 153). Neither woman had ever met appellant before this incident. (RR IV 73, 153).

Appellant fired a gunshot into the floor and instructed Oscar to tie up Erika and Chante. (RR IV 154-155). Appellant led the women into a bedroom where Oscar secured them with a rope. (RR IV 74-75). Oscar began removing the stolen property from the house. (RR IV 75-76). When Erika began cursing the men, appellant approached her from behind and shot her in the head. (RR IV 82-83, 156, 174-175). He then pointed the gun at Chante, but it would not fire. (RR IV 86). His gun "clicked" three times. (RR IV 86).

After appellant ran out of the room, Chante untied herself, jumped out a window, and summoned help. (RR IV 87-92). Erika was hospitalized for a short while and survived her injury. (RR IV 200). But at the time of trial, the bullet was still in her head. (RR IV 172).[7]

The state court of appeals found that there was sufficient evidence to warrant the jury instruction and affirmed Olivares's conviction in an unpublished opinion. Olivares v. State, No. 14-09-00915-CR, 2010 WL 2301536 (Tex. App.—Hous. [14th Dist.] June 10, 2010). The Texas Court of Criminal Appeals refused Olivares's petition for discretionary review on September 15, 2010. Because he did not appeal further by seeking a writ of certiorari with the

---

[7]State's Appellate Brief, Docket Entry No. 12-20, pp. 5-6.

United States Supreme Court, his conviction became final 90 days later on December 14, 2010.[8]

On September 3, 2012, Olivares challenged his conviction by filing a state application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure.[9]  In that application Olivares asserted that he was entitled to relief for the following reasons:

(1)  there were three alibi witnesses willing to testify that Olivares was at a barbeque on the night of the offense and was actually innocent;

(2)  he was denied effective assistance of counsel when his trial attorney failed to:  (a) obtain testimony from the three alibi witnesses; (b) impeach one of the state's witnesses on identification; (c) object to bolstered testimony; and (d) object to prejudicial hearsay;

(3)  the evidence identifying him as the second suspect was "inherently unreliable and flawed";

(4)  the trial court abused its discretion and violated his right to due process by allowing a police officer to testify as a medical expert;

(5)  he was denied effective assistance of counsel on direct appeal;

(6)  he was denied effective assistance of counsel in connection with his petition for discretionary review; and

(7)  the evidence was insufficient to support his conviction.[10]

---

[8]See Sup. Ct. R. 13.1.

[9]Application, Docket Entry No. 13-18, pp. 6-20.

[10]Id. at 11-17.

-4-

The state habeas corpus court entered findings of fact and concluded that Olivares failed to show that his conviction and sentence were improperly obtained.[11]  On June 3, 2015, the Texas Court of Criminal Appeals denied relief without a written order on findings of the trial court without a hearing.[12]

On June 18, 2015, Olivares filed the pending Petition challenging his aggravated assault conviction in case number 1170743.[13]  He seeks relief on the same or similar claims that were raised and rejected on state habeas corpus review.  The respondent has filed a Motion for Summary Judgment, arguing that the Petition must be dismissed because it is barred by the governing one-year statute of limitations on federal habeas corpus review.

## II.  Discussion

### A.  The One-Year Statute of Limitations

This federal habeas corpus proceeding is governed by the Anti-terrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L.

---

[11]State's Proposed Findings of Fact, Conclusions of Law and Order ("Findings and Conclusions", Docket Entry No. 13-15, pp. 6-15.

[12]Action Taken on Writ No. 82,690-02, Docket Entry No. 13-13, p. 1.

[13]The Clerk's Office received the Petition on June 26, 2015, and filed it that same day.  Olivares executed the Petition on June 18, 2015, indicating that he placed it in the "prison mailing system" on that date.  Under the "mailbox rule," a reviewing court treats the date a pro se prisoner deposits his habeas corpus petition in the mail as the filing date.  See Fisher v. Johnson, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)).

No. 104-132, 110 Stat. 1214 (1996).   Under the AEDPA all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d).   If a prisoner challenges a state court judgment of conviction, the one-year statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   28 U.S.C. § 2244(d)(1)(A).

As noted above, Olivares's conviction became final on December 14, 2010, when his time to seek a petition for a writ of certiorari with the Supreme Court expired.   That date triggered the statute of limitations, which expired one year later on December 14, 2011.   Olivares's state habeas proceeding, which was filed on September 3, 2012, and dismissed on June 3, 2015, has no tolling effect because it was filed after the limitations period had already expired.   See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).   As a result, Olivares's federal petition, filed on June 18, 2015, is untimely and therefore barred from review by the governing statute of limitations unless Olivares establishes that equitable tolling is warranted.

B.   **Equitable Tolling**

Olivares contends that his untimely Petition should be excused for equitable reasons because he did not learn that the Texas Court of Criminal Appeals refused his petition for discretionary review

on September 15, 2010, until he received a letter from the Fourteenth Court of Appeals nine months later on June 17, 2011.[14] In addition, Olivares contends that equitable tolling is warranted because he is actually innocent.[15]

The statute of limitations found in the AEDPA may be equitably tolled, at the district court's discretion, only "in rare and exceptional circumstances." Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). The petitioner bears the burden of establishing that equitable tolling is warranted. See Howland v. Quarterman, 507 F.3d 840, 845 (5th Cir. 2007) (citing Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002)). The Supreme Court has clarified that a "'[habeas] petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

Olivares does not demonstrate that he is entitled to equitable tolling because of the delay in receiving notice about his petition for discretionary review. By his own admission Olivares received

---

[14]Petition, Docket Entry No. 1, p. 9; Petitioner's Memorandum of Law in Support of § 2254 Habeas Application ("Memorandum of Law"), Docket Entry No. 4, p. 35; Letter from the Fourteenth Court of Appeals, dated June 14, 2011, Docket Entry No. 4-1, p. 7; Petitioner's Response to MSJ, Docket Entry No. 15, p. 3.

[15]Memorandum of Law, Docket Entry No. 4, pp. 1-2.

notice in June of 2011 while he still had six months remaining during the limitations period, which did not expire until December 14, 2011. Olivares provides no credible reason for the delay of over a year from the time that he received the notice until he filed a state habeas corpus application on September 3, 2012. Under these circumstances, Olivares does not establish that he pursued relief with the requisite due diligence.

Actual innocence, if proven, may excuse a failure to comply with the one-year statute of limitations on federal habeas corpus review. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To be credible a petitioner must support a claim of actual innocence with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup v. Delo, 115 S. Ct. 851, 865 (1995). To prevail on such a claim a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 867.

In support of his claim of actual innocence, Olivares presents affidavits from his former landlord, Eddie De Leon, and his landlord's wife, Gloria De Leon.[16] According to these affidavits, Olivares attended a barbeque at the De Leon residence from 5:30 p.m. to 12:30 a.m. on the night that the aggravated assault

---

[16]Affidavits of Eddie De Leon and Gloria De Leon, Docket Entry No. 1, pp. 15-16.

took place.[17]  Olivares also presents an affidavit from his sister, Vanessa Olivares Gonzalez, who states that she attended the De Leon barbeque with her brother.[18]  Olivares explains that these witnesses would have testified at trial that he could not have committed the offense, but his defense attorney failed to call them.[19]

The respondent argues that the conclusory affidavits supplied by Olivares do not establish that he was present for the entire duration of the barbeque or that he was wrongly identified as the man who perpetrated the aggravated assault along with his brother Oscar on the night in question.[20]  The state habeas corpus court also found the affidavits unpersuasive in light of the evidence against Olivares.  Because Olivares knew or should have known about his alibi defense at the time of his trial, the state habeas corpus court found that the affidavits were not "newly discovered evidence" of actual innocence.[21]  The state habeas corpus court also rejected Olivares's claim that his counsel was deficient for failing to call the De Leons or Vanessa Gonzalez at trial.[22] According to an affidavit from Olivares's defense counsel, Olivares

---

[17]Id.

[18]Affidavit of Vanessa Olivares Gonzalez, Docket Entry No. 1, p. 17.

[19]Petition, Docket Entry No. 1, p. 11.

[20]Respondent's MSJ, Docket Entry No. 11, p. 11.

[21]Findings and Conclusions, Docket Entry No. 13-15, pp. 8, 10-11.

[22]Id. at 11.

never told him that the De Leons were possible alibi witnesses.[23]
When defense counsel asked Gonzalez if she would testify as an
alibi witness, Gonzalez declined.[24]   The state court found that
defense counsel's affidavit was "credible" and that Olivares's
claims were "not credible."[25]

Fact-findings made by the state court, including credibility
determinations, are presumed correct unless the petitioner
overcomes that presumption with "clear and convincing evidence."
28 U.S.C. § 2254(e)(1); Kinsel v. Cain, 647 F.3d 265, 270 (5th Cir.
2011) ("recognizing that credibility determinations in particular
are entitled to a strong presumption of correctness" on habeas
review) (citation omitted).   Olivares, who offers no plausible
explanation for why he did not come forward sooner with his
purported alibi evidence, has failed to overcome that presumption.
See McQuiggin, 133 S. Ct. at 1936 (noting that undue delay by a
petitioner may seriously undermine the credibility of an actual-
innocence claim).

The   state   court   record,   which   contains   positive
identifications of Olivares as the armed assailant from both
victims of the aggravated assault, supports the state court's
findings and ultimate conclusion that Olivares failed to establish

---

[23]Affidavit of Don R. Cantrell, Docket Entry No. 13-17, p. 3.

[24]Id. at 4.

[25]Findings and Conclusions, Docket Entry No. 13-15, pp. 7, 8.

proof of his actual innocence.   There is no dispute that the two victims, Chante Jones and Erika Rodriguez, identified one of the assailants as Olivares's brother, Oscar, with whom the victims were both well acquainted.[26]   Jones identified Olivares in open court as the man who entered the apartment with a gun and shot Rodriguez in the head.[27]   Jones was certain that Olivares was the shooter because she recognized him in person and identified a large, distinctive tattoo that he had over his abdomen as the same one displayed by the shooter on the night of the offense.[28]   Jones withstood extensive cross-examination from Olivares's attorney, insisting adamantly that Olivares "knows what he and his brother did."[29]

Olivares does not dispute that his brother, with whom the victims were familiar, was one of the perpetrators.[30]   Likewise, Olivares does not dispute that he has a large tattoo on his abdomen that is identical to the one described by Jones at trial.   Based on this record Olivares does not show "that it is more likely than not

---

[26]Reporter's Record, vol. 4, Docket Entry No. 12-10, pp. 69-70; Reporter's Record, vol. 4 (cont'd), Docket Entry No. 12-11, p. 33.

[27]Reporter's Record, vol. 4, Docket Entry No. 12-10, pp. 73-83.

[28]Id. at 76, 79-82; Reporter's Record, vol. 4 (cont'd), Docket Entry No. 12-11, pp. 19-20; State's Exhibit 1, Docket Entry No. 12-17, p. 6.

[29]Reporter's Record, vol. 4 (cont'd), Docket Entry No. 12-11, p. 19.

[30]Oscar Olivares's conviction was affirmed on direct appeal. See Olivares v. State, No. 01-09-00938-CR, 2011 WL 2651081 (Tex. App. — Hous. [1st Dist.] Jan. 20, 2011, pet. ref'd).

that no reasonable juror would have convicted him in light of the new evidence." Schlup, 115 S. Ct. at 867. Because Olivares has failed to prove his actual innocence, he does not establish that he is entitled to equitable tolling of the statute of limitations. Absent a valid basis for tolling the statute of limitations, the Petition will be dismissed as untimely under 28 U.S.C. § 2244(d)(1).

### III.  Certificate of Appealability

The Petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, which requires a certificate of appealability to issue before an appeal may proceed. See Hallmark v. Johnson, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . .'" Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (citing 28 U.S.C. § 2253(c)(1)). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a

constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 123 S. Ct. at 1039. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, this court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner states a valid claim for relief. Therefore, a certificate of appealability will not issue.

## IV.  Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.  Respondent William Stephens' Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED**.

2.  Petitioner Santiago Meliton Olivares's Motion for Evidentiary Hearing (Docket Entry No. 16) is **DENIED**.

3.  The Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DISMISSED with prejudice** as barred by the statute of limitations.

4.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, this 18th day of September, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE